SIMEON MANCHESTER & Wife *v.* CHARLES DURFEE.

C. D. devised to his five daughters, each, an undivided seventh part of his estate; "the devises to my five daughters to be to them an estate for life, and to the heirs of their bodies after them, and to their heirs and assigns of such heirs forever. But in case any of my said daughters shall die without issue surviving them, then my will is, and all such real estate as is herein devised to such of my children as shall so die without issue, shall then pass to such of my children as shall survive, and then to them and their heirs and assigns forever; it being my will and intent to give an estate in fee to such of my daughters as shall die leaving issue, and an estate for life only to such of them as shall die without leaving issue to survive them." *Held,* that the daughters, each, took an estate tail in their respective shares, with cross-remainders to survivors, upon the death of any of them without issue.

The second section of chapter 154 of the Revised Statutes, relating to the creation and continuance of estates tail, does not apply to this devise; the testator having used the strict words of limitation,—"heirs of their bodies,"—to describe who should take after the heirs of his daughters, and not the word "children" or "issue," the cases provided for by that section.

A deed executed by the tenant in tail, in such case, according to the provisions of sect. 3, ch. 145, of the Revised Statutes, will bar the condition upon which the estate is determinable and the remainder contingent; and hence, a purchaser from the tenant of a fee, will be compelled, upon a bill for specific performance, to perform his contract with him.

BILL IN EQUITY for the specific performance of a contract made by the respondent, to purchase certain land belonging to the complainants, situated in the town of Tiverton.

It appeared from the bill and agreed statement of the parties filed with it,—the suit being an amicable one,—that Simeon Manchester and his wife, Mary A. Manchester, formerly Mary A. Durfee, who were the complainants, had contracted to sell and convey to the respondent, Charles A. Durfee, and that he had contracted to purchase of them, a certain tract of land in Tiverton, described in the written memorandum of their agreement as "all that land, with the buildings thereon, set off and

assigned to the said Mary A. under the will of her late father, Charles Durfee, of said Tiverton, deceased," by a committee of partition, appointed by the court of probate of Tiverton for that purpose; the stipulated consideration being the sum of $500; $250 to be paid by the purchaser on the first day of January, 1858, and the remaining $250 on the first day of February, 1858, and the deed of the land to be delivered on the day when the last payment should be made. Both parties were desirous to carry out their contract; but doubts having arisen in regard to the title of Mary A. to the land agreed to be conveyed, and her ability to give to the purchaser an absolute estate in fee-simple, as agreed, this bill was filed, by consent, for the purpose of resolving them.

The clauses in the will of her father, which was dated October 2, 1849, proved December 3d, following, under which she derived her title to the land contracted to be sold, were the following:—

" 1. I give and devise to my daughter, Betsey Field, wife of Benjamin Field, the one equal seventh part of all my real and personal estate, not otherwise disposed of, upon condition she pay, or cause to be paid, to my said executors, the sum of one hundred dollars, which sum I consider I have heretofore advanced to her.

" 2. I give, devise, and bequeathe to my four daughters, to wit, Sarah L. Manchester, wife of Charles Manchester, *Mary A. Durfee*, Lydia F. Durfee, and Judith B. Durfee, each, the one undivided seventh part of my said estate; the devises to my five daughters to be to them an estate for life, and to the heirs of their bodies after them, and to their heirs and assigns of such heirs forever. But in case any of my said daughters shall die without issue surviving them, then my will is, and all such real estate as is herein devised to such of my children as shall so die without issue, shall then pass to such of my children as shall survive, and then to them and their heirs and assigns forever. It being my will and intent to give an estate in fee to such of my daughters as shall die leaving issue, and an estate for life only to such of them as shall die without leaving issue to survive them."

It appeared by the report of the committee appointed by the court of probate of Tiverton to divide the property of the testator, Charles Durfee, amongst his children and devisees, according to his will, that share No. 2, consisting of a portion of a dwelling-house and lot and of a wood lot, was drawn by, and set off to, the complainant, Mary A. Manchester, being the property agreed as aforesaid to be purchased by the respondent.

*Thomas Durfee,* for the complainants :—

1st. Though the words " my estate," or " all my estate," when used in a will, pass a fee-simple, (3 Greenl. Cruise, 264, § 25 *et seq.*) yet they are not technical words for that purpose, and are here limited by the words " heirs of their bodies " in the following clause, which, under the rule in Shelley's case, restrict the estate of the testator's five daughters to estates in fee-tail. 4 Kent, Com. 214 ; 3 Greenl. Cruise, 275 ; 1 Stephen's Blackst. 308 ; 2 Jarman on Wills, 242.

2d. The case is not within the second section of chapter 154 of the Revised Statutes ; the words here being the most technical to create an estate tail, " heirs of their bodies," and not " issue," or " children," the cases provided for by the statute.

3d. The superadded words, " and to their heirs and assigns of such heirs forever," it is well settled do not convert the words " heirs of the body" into words of purchase. 2 Jarman on Wills, 272 ; *Goodright* d. *Lisle* v. *Pullyn*, Ld. Raym. 1437 ; S. C. 2 Stra. 729 ; *Wright* v. *Pearson*, Amb. 358 ; Fearne, Cont. Rem. 126 ; *Geering* v. *Shenton*, Cowp. 410 ; *Measure* v. *Gee*, 5 B. & A. 910 ; *Keach* v. *Ward*, 2 Sim. & Stu. 411 ; *Nash* v. *Nash*, 3 B. & A. 838 ; *Buxton* v. *Uxbridge*, 10 Met. 87. And see *Burnett* v. *Coby*, 1 Barn. B. R. 367 ; 2 Jarman on Wills, 272 ; *Legatt* v. *Sewell*, 1 P. Wms. 87 ; *Morris* v. *Ward*, 3 Greenl. Cruise, 346, § 20.

4th. The next clause, giving the estate of such of his daughters over, in the event of their dying without issue, does not affect this construction ; the word " estate," employed in it, obviously denoting, not the *interest*, but the *proportion*, one seventh, which each had, and which, in the event contemplated the testator devised over. *Chester* v. *Painter*, 2 P. Wms. 355 ;

3 Greenl. Cruise, 333, § 39. This clause is perfectly consistent with an estate tail in the daughters, since such an estate determines upon the tenant's dying without issue; and was intended to prevent the portions of the daughters from going to the heirs general of the testator, and to create cross-remainders between the five daughters in the event of the determination of their estates tail. *Wright* v. *Pearson*, Amb. 358; Fearne, Cont. Rem. 126; 3 Greenl. Cruise, 351, § 30, p. 367; *Geering* v. *Shenton*, Cowp. 410; *Measure* v. *Gee*, 5 B. & A. 910; *Nash* v. *Nash*, 3 Ib. 838; 2 Jarman on Wills, *supra.*

5th. The last clause of the devise, declaratory of the will and intent of the testator, is perfectly satisfied by construing the word " fee," in that clause, to mean " fee-tail," to which it is as applicable as to fee-simple, and better consists with his intent; since it is absurd to suppose that the testator intended that they should not know what estates they had until they were on their death-beds.

6th. The courts are invincibly repugnant to breaking in upon the rule in Shelley's case, even where the intention of the testator unequivocally requires it to be done. Jarman on Wills, 246; 4 Kent, Com. 229.

7th. If the estates of the daughters be estates tail, then the complainants can, by virtue of ch. 145, § 3, of the Revised Statutes, convey a title in fee-simple by a deed acknowledged in open court, before the supreme court or court of common pleas.

8th. But if their estates be but estates for life, they can, by deed of feoffment, accompanied by livery of seisin, (a recognized mode of conveyance in this state, Rev. Stats. ch. 145, § 1,) destroy the contingent remainders expectant upon their decease, and vest in the defendant an indefeasible estate in fee-simple. 1 Stephen's Blackst. 306; 1 Greenl. Cruise, 298; 4 Kent, Com. 253.

9th. The construction, that the estates of the daughters are fee-simples, determinable upon their decease without issue, is objectionable, because it nullifies the declared intention of the testator, that, if they die leaving no issue, they shall have but life estates, and is opposed to rules which, in the language of

Chancellor Kent, have become "land-marks;" and would convert the remainders over, which are capable of being supported as contingent remainders, contrary to first principles, into executory devises. *Doe* v. *Morgan,* 3 T. R. 763; 3 Greenl. Cruise, 460, 461; *Nightingale* v. *Burrill,* 15 Pick. 104.

10th. The last sentence of the clause of this devise must, therefore, be rejected for repugnancy, and the daughters be held to take their estates as devised in the previous sentences of the clause.

*T. C. Greene,* for the respondent, submitted the case upon the argument of the complainants' counsel; professing that his client was willing to fulfil his agreement if the complainants could make, to the land contracted to be purchased, a good title in fee-simple.

AMES, C. J. If this will is to be construed by the rules of interpretation established at the common law, it is clear that the daughters of the testator took under it estates tail in their respective shares of his real estate. It is too well settled to be controverted, that the words " heirs of their bodies " must be held to be words of limitation, and not of purchase; and that, even though the estates of the daughters are at first declared to be for life, and words of limitation are superadded to the words " heirs of their bodies," the rule in Shelley's case must, nevertheless, be inflexibly applied as a rule of law, and the life estates, expressly given to the daughters, be enlarged thereby to estates tail. The numerous decisions in support of this construction, in cases in which it is acknowledged to contravene the testator's intention, are so well collected and collated by Mr. Jarman, in the 37th and 38th chapters of his valuable treatise on Wills, that farther reference to authority is unnecessary.

In this case, however, the intent of the testator would seem to require this interpretation; for, although he first expressly gives to four, out of five of his daughters, estates for life, yet by the devise over on failure of their issue, and by his express declaration in the concluding sentence of this portion of his will, it is made plain that he intended that they should all have estates " in fee" if they left surviving issue, and estates for life only, in the event they left no such issue. Now the words " in

fee," in this sentence, are quite as applicable to a *fee-tail* as to a fee-simple; and his general intent declared in it, considering the technical language before employed by him in limiting the estates of his daughters, can only be carried out by holding their estates to be estates tail.

Is this construction forbidden by that portion of our statute of wills which relates to the creation and continuance of estates tail? By the second section of that statute (Rev. Stats. ch. 154) it is provided: "No person seised in fee-simple shall have a right to devise any estate in fee-tail for a longer time than to the children of the first devisee; and a devise for life to any person, *and to the children or issue generally* of such devisee, in fee-simple, shall not vest a fee-tail estate in the first devisee, but an estate for life only; and the remainder shall, on his decease, vest in his children or issue generally, agreeably to the direction in such will." Are we to read the latter provision of this section as applicable only to wills in which the words "children" or "issue" of the life-tenant are used to describe who is to take the remainder in fee? or as applicable also to wills in which, after an estate for life to one, the remainder is given to his or her "heirs of the body," with superadded words of limitation in fee? Was it designed to include only the particular cases named in it, or by interpretation all other analogous cases?

We adopt the narrower interpretation of this section;

*First.* Because, if it had been designed to abrogate the rule in Shelley's case, as applied to the creation of estates tail, it would have been very easy, by the use of general language, to have done so.

*Second.* If without such sweeping design, the intent of the legislature had been to apply the prohibition to cases in which the technical words to limit an estate tail, to wit, "heirs of the body," were used, it is strange that they are not set down in the statute as they are in the similar statutes of Massachusetts, Connecticut, New Jersey, and New York, (4 Kent, Com. 232, and notes *b* and *c*,) but that the words "children" and "issue" are; considering that these latter words are not words of limitation in a deed, and are not strictly such in a will. "If a man," says Lord Coke, "give lands or tenements to a man, *et suo semini,*

or, *exitibus vel prolibus de corpore suo*, to a man and to his seed, or to the issue or children of his body, he hath but an estate for life ; for albeit that the statute (*de donis conditionalibus*) provideth that *voluntas donatoris secundum formam in charta doni sui manifeste expressum, de cætero observetur*, yet that will and intent must agree with the rules of law ; " and of this opinion, he continues, was Littleton himself, as appeared by his learned reading of that statute.   Co. Lit. 20 *b*.   It is evident also, from the cases collected by Mr. Jarman, that the words " children " or " issue " when used in *wills*, occupy a debatable position between words of limitation and words of purchase, and are treated by the courts as either, as will best, in their view, carry out the intent of the testator ; the word " children " being deemed a word of purchase, and the word " issue " a word of limitation, unless clearly otherwise intended. 2 Jarman on Wills, 34, 35, 307 *et seq.*, 328 *et seq.*

The exclusion of the words " heirs of the body " from the statute is the more remarkable, because it was the presence of precisely these words in the case of *Perrin* v. *Blake*, decided in the King's Bench in 1770, which gave rise to that heated controversy, which, on account of the celebrity of Lord Mansfield, and the attack upon him by Mr. Fearne and others, versed in the law of real estate, " divided," according to Lord Campbell, " the profession of the law into bitter factions for many years, and is still famous in the traditions of Westminster Hall."   Lives of the Chief Justices, vol. 2, p. 329, (2d Amer. ed.)   This celebrated case, and the controversy growing out of it, could not have been unknown to the member of the profession who drafted the clause we are considering, first inserted into our wills act in 1798 ; and if so, he must have designed to leave the decision in that case to stand good law here, as it was determined by the twelve judges in the Exchequer Chamber, against the opinion of Lord Mansfield and the King's Bench.

*Third.*   The cases collected by Mr. Jarman in the 37th, 38th, 39th, and 40th chapters in his book on wills, indicate, that whilst on the one hand the courts have, in general, inflexibly applied the rule in Shelley's case to all devises in which, after a life estate is given to one, a remainder is given to his " heirs of

the body" with or without superadded words of limitation in fee, and, in consequence, held, that in such cases the first devisee took an estate tail,—they so differed in this regard as to devises in which the remainder was given to the "children" or "issue" of the first devisee, holding them, with the distinction before noticed, to be either words of limitation or of purchase as the intent of the testator, frequently determined according to artificial rules, seemed to require, as to present no certain rule of decision, and to leave the matter almost at large to the discretion of the judge, who, by his judgment frequently disappointed the obvious intent of the testator. 2 Jarman on Wills, 34–37, 232–456. The statute, we are of opinion, was designed to occupy this debatable ground, with the view of settling a vexed question rather according to the ordinary intent of testators, than in obedience to any supposed policy of the law which had been raised up judicially to defeat it.

Our conclusion is, that this portion of our statute of wills has no application to the devise, upon the construction of which we are called to decide.

Considering, then, that the complainant, Mary A. Manchester, took, under the will of her father, an estate tail in the portion of his real estate which has been set off to her, the case of *Driver* d. *Edgar* v. *Edgar*, Cowp. 379, is precisely in point, that, notwithstanding the will declares that she is, if she die without issue, to have an estate for life only, this condition, and the remainder over to her surviving sisters dependent upon it, will be barred by a common recovery. The will, in this respect, declares merely what is true of every estate tail, —that, by the form of the gift, it ceases with the death of the tenant without issue, and thereupon the gift passes over to any one to whom it may be limited in remainder, or if there be no such remainder limited, reverts to the donor, or to his heirs. The third section of chapter 145 of the Revised Statutes makes a deed in fee-simple, duly executed by a tenant in tail, and acknowledged before the supreme court or court of common pleas, equivalent to a common recovery; for it provides, that "such conveyance shall vest an estate in fee-simple in the grantee, his heirs and assigns, and shall bar the tenant in tail, his heirs and

assigns, and all others who shall claim the same in remainder or reversion expectant upon the determination of such estate tail."

We are, therefore, of opinion that the complainants can make a good title to the land contracted to be sold by them to the respondent, and are entitled to a decree that his contract of purchase shall be specifically performed.